UNITED STATES DEPARTMENTOF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Robert J. Schneider, Jr., Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Email: robert.j.schneider@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | : Case No. 24-00112 (RG) |
| | : Miscellaneous Proceeding |
| US Bankruptcy Court | : |
| | : |
| v. | : Judge: Honorable Rosemary Gambardella |
| | : |
| David L. Chapman | : Hearing Date: April 29, 2025, at 11:00 a.m. |
| | : |

**UNITED STATES TRUSTEE'S MEMORANDUM OF LAW REGARDING
IMPOSITION OF SANCTIONS AGAINST DAVID L. CHAPMAN, ESQUIRE**

The United States Trustee ("U.S. Trustee"),[1] by and through counsel, in furtherance of

his duties and responsibilities pursuant to 28 U.S.C. §§ 586(a)(3) and (5), hereby submits this

Memorandum of Law regarding the imposition of sanctions against David L. Chapman, Esquire,

the possibility of which has been raised by this Court's Order to Show Cause Why Sanctions

Should Not Be Imposed For Failure to Properly File List of Creditors (the "Order to Show

Cause") and subsequent hearings thereon and pleadings related thereto.  Docket Entry 4.[2]

Although the Order to Show Cause did not specify any potential sanctions or the bases therefor,

---

[1] The United States Trustee is an official of the Department of Justice appointed by the Attorney General to
supervise the administration of bankruptcy cases.  28 U.S.C. §§ 581–589.  United States Trustees "serve as
bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena."  H.R. Rep. No. 95-
595, at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049.  The United States Trustee "may raise and may
appear and be heard on any issue in any case or proceeding under this title." 11 U.S.C. § 307.

[2] Unless otherwise noted, references to "Docket Entry ___" are entries on the electronic docket for this
miscellaneous proceeding, *US Bankruptcy Court v. David L. Chapman*, Misc. Pro. No. 24-00112 (RG).

in the Trustee's Certification in Response to Certification of David L. Chapman, Chapter 13

Standing Trustee Marie-Ann Greenberg requests that "Mr. Chapman should be suspended from

ECF privileges for a period of not less than one-year; Mr. Chapman should be disgorged of fees

in his cases; Mr. Chapman should be required to turn over the signed petition page to the Office

of the U.S. Trustee for each case he has filed; Mr. Chapman should be sanctioned by the Court;

and Mr. Chapman should have to pay fees and costs in the amount of $5,000 attendant to the

time spent by the Standing Trustee to address this matter."  Docket Entry 14, page 19 of 19.

For the following reasons, the U.S. Trustee submits that the record developed in this

miscellaneous proceeding warrants all of the relief requested by Ms. Greenberg, and more, under

one or more of the following provisions: **(i)** 11 U.S.C. § 329(a), in conjunction with Federal Rule

of Bankruptcy Procedure 2016(b) and 11 U.S.C. § 105(a); **(ii)** 11 U.S.C. § 329(b), in conjunction

with Federal Rule of Bankruptcy Procedure 2017; **(iii)** 11 U.S.C. § 526(c)(5); **(iv)** 11 U.S.C.

§ 105(a), not on its own but in conjunction with several Federal Rules of Bankruptcy Procedure

and District of New Jersey Local Bankruptcy Rules identified herein; and **(v)** Federal Rule of

Bankruptcy Procedure 9011(c).[3]

## BACKGROUND

The relevant facts are contained in documents filed on case dockets maintained on this

Court's CM/ECF system, including but not limited to the following documents filed in this

---

[3] Separate and apart from whatever sanctioning power it may have under section 105(a), this Court also has the inherent power to "control admission to its bar and to discipline attorneys who appear before it." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  The U.S. Trustee is not currently asking the Court to invoke its inherent power, because before it can do so the Court must find that Mr. Chapman acted in bad faith. *Id.* at 45-46.  Unlike the Court's inherent power, other sources of sanctioning authority available to this Court do not require a finding of bad faith. *See, e.g.*, *In re Taylor*, 655 F.3d 274, 282 (3d Cir. 2011) (holding bad faith not required to impose sanctions under Fed. R. Bankr. P. 9011); *Hobbs v. Chesson*, Misc. Pro. No. 16-00201, 2018 WL 4172667, at *10 (Bankr. W.D. La. Aug. 19, 2018) (holding bad faith not required to order disgorgement under section 329 or grant relief under section 526); *In re Santana*, No. 12-36802/JHW, 2013 WL 1498278, at * 3 (Bankr. D.N.J. Apr. 10, 2013) (holding bad faith not required to impose sanctions under section 105(a)).

miscellaneous proceeding: a Certification dated March 12, 2025 filed by Mr. Chapman (Docket
Entry 6); a letter and exhibit dated March 13, 2025 filed by Standing Chapter 13 Trustee Albert
Russo (Docket Entry 7); a Certification in Response to Order to Show Cause dated March 14,
2025 filed by Ms. Greenberg (Docket Entry 8); a Certification and supporting exhibits dated
April 10, 2025 filed by Mr. Chapman (Docket Entries 11-13); and the aforementioned Trustee's
Certification in Response to Certification of Davis L. Chapman dated April 14, 2025 filed by Ms.
Greenberg (Docket Entry 14).

Certain salient facts can be gleaned from those documents:

- Mr. Chapman admits that "[a]ll of [his] chapter 13 filings are for people who are trying to keep[,] or stay a sheriff sale of[,] real estate property" (Docket Entry 6, ¶ 5);

- The three cases in the exhibit to Mr. Russo's submission "show[ed] a pattern of poor representation"; all three were dismissed without a plan being confirmed, two were filed for the same debtor within less than four months, and in one case no disclosure of attorney compensation was filed (Docket Entries 7 & 7-1);

- "[T]he clients [Mr. Chapman] ha[s] represented in chapter 13 bankruptcy are mainly state foreclosure cases" (Docket Entry 13, page 1 of 11);

- Most of the cases Ms. Greenberg  identified "have been resolved through loss mitigation programs" (*id.*);

- Mr. Chapman makes a point of emphasizing that that some of his former clients "still live at the property," due to "loss mitigation efforts" or "multiple loan modifications"  (*id.*, pages 2 & 3 of 11);

- Mr. Chapman admits that some of his clients filed—several "request[ing] multiple filings"—in order "to gain more time for the bank to review" loan modifications or to "assist[] in the transaction" when trying to sell the property through a short sale (*id.*, pages 3, 4, 5, 7, 8, 9 & 10 of 11);

- In 19 of the cases identified in his certification, Mr. Chapman filed with the goal of effecting a short sale of the debtors' property (*id.*, pages 3, 4, 5, 7, 8, 9 & 10 of 11);

- 21 of the cases identified in Mr. Chapman's certification were serial filings—he filed twice for seven people and filed "tag-team" petitions for three couples (one or two cases for each partner) (*id.*, pages 1-10 of 11);

- Mr. Chapman admits that two of his serial cases were "filed to provide [the debtor] more time to complete her plans of moving to another state," which she was able to do "before the sheriff sale was completed" (*id.*, page 5 of 11);

- Of the 50 cases identified in Mr. Chapman's certification (which is not the universe of all chapter 13 cases he has filed in Trenton and Newark since 2015, does not include his most recently-filed cases, and does not include any of the chapter 7 cases he has filed), 46 were dismissed (most on the Court's Order to Show Cause), one was converted to chapter 7, and three (*Allen* 25-11897, *Maloney* 25-12317, and *Finley* 25-12490) remain open as of this writing; and

- ***No plan has ever been confirmed in any chapter 13 case filed by Mr. Chapman***; indeed, in most of his cases no plan was even filed.

From her review of the responses regarding the cases addressed in Mr. Chapman's certifications, as well as her office's first-hand experience with the cases he has filed in the Newark vicinage, Ms. Greenberg made the following observations:

Mr. Chapman has exhibited a clear and consistent pattern with his very many Chapter 13 bankruptcy filings: (1) he files only skeletal petitions, (2) schedules that are filed are incomplete, incorrect and misleading; (3) wet signature pages have not been provided, (4) 341a documents have not been provided on all or virtually all of his filings, (5) the cause of most, if not all, of the filings include an attempt to hinder and delay creditors and parties in interest and that is clear from counsel's certification, (6) the filed fee disclosure forms are incorrect forms and lack the appropriate initials, signatures and information, (7) counsel fails to appear at most if not all 341a and confirmation hearings, (8) there is no information or disclosure regarding counsel's D[ebt]R[elief]A[gency] requirements under the Code, (9) there is no information to clarify where counsel gets his clients from.

Docket Entry 14, pages 18-19 of 19.

Ms. Greenberg also noted that, in virtually every case addressed in his certification, Mr. Chapman failed to disclose the amount he was paid, or agreed to be paid, for services rendered or to be rendered in or in connection with or in contemplation of the case—including but not limited to any services he provided to the debtors regarding loan modifications, loss mitigation, foreclosures, evictions, sheriff's sales, and short sales (collectively referred to herein as "creditor negotiation services"). *See* Docket Entry 14, pages 2 through 17 of 19; *see also* 11 U.S.C. § 329(a); Fed. R. Bankr. P. 2016(b). Ms. Greenberg further noted that Mr. Chapman admitted that several of the case had been "filed solely as a stall tactic." *See* Docket Entry 14, pages 5, 6, 7, 8, 9, 10, 12, 13, 14 & 15. In addition, Ms. Greenberg noted that "[i]t is evident that all filings are incomplete at best and not attended to by counsel," that "[t]here appears to be an utter lack of due diligence," that "[v]irtually all [of Mr. Chapman's cases] have no 341a documents, no plan payments, Court issued Orders to Show Cause, and on multiple filings there is no attempt to extend the automatic stay," and "[m]any are multiple filers as well." *Id*. at page 1 of 19. And Ms. Greenberg noted that, in subsequent cases that were not addressed by Mr. Chapman, many of the same inadequacies have persisted. *Id*. at pages 17 & 18 of 19.

## ARGUMENT

Although Mr. Chapman has filed a number of bankruptcy petitions over the years, it is clear that he is not actually a bankruptcy practitioner. Instead, his practice focuses on helping his clients remain in their home; filing a bankruptcy petition is merely one tool he uses to that end. That's why his clients lack the ability, or even the intention, to file a confirmable chapter 13 plan—their goal is to stay in their home, not to use their income to pay their creditors over time. And that's why Mr. Chapman pays so little heed to the requirements imposed on consumer bankruptcy attorneys by the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

But Mr. Chapman's practice is an abuse of chapter 13, and must be stopped.

This Court has issued an Order to Show Cause why Mr. Chapman should not be

sanctioned for perpetuating these abusive practices.  In response, Ms. Greenberg has requested

that this Court—

- Order Mr. Chapman to return all fees he received in the cases he filed;

- Order Mr. Chapman to turn over to the United States Trustee the signed signature petition page for each case he has filed;

- Order Mr. Chapman to pay Ms. Greenberg's fees and costs in the amount of $5,000;

- Order Mr. Chapman to "be sanctioned by the Court"; and

- Order that Mr. Chapman's ECF privileges be suspended for a period of not less than one year.

Docket Entry 14, page 19 of 19.

For the following reasons, all of the relief requested by Ms. Greenberg, and more, is

warranted on this record.

**I.     Mr. Chapman should be ordered to account for, and return to his clients, all fees he has received for services rendered or to be rendered in, in contemplation of, and in connection with all of the cases identified in Ms. Greenberg's most recent certification**

Every attorney representing a debtor in a bankruptcy case must disclose "the

compensation paid or agreed to be paid, if such payment or agreement was made after one year

before the date of the filing of the [bankruptcy] petition, for services rendered or to be rendered

*in contemplation of or in connection with the case* by such attorney, and the source of such

compensation."  11 U.S.C. § 329(a) (emphasis added).  An initial disclosure must be filed

"[w]ithin 14 days after the order for relief," but the disclosure requirement continues throughout

the case, as "a supplemental statement" must be filed "[w]ithin 14 days after any payment or

agreement to pay not previously disclosed."  Fed. R. Bankr. P. 2016(b).  Debtors' attorneys must

6

file compensation disclosures even if they do not anticipate applying for compensation from the bankruptcy estate. 11 U.S.C. § 329(a); Fed. R. Bankr. P. 2016(b).

The phrase "in contemplation of or in connection with" in section 329(a) is written in the disjunctive; that means legal services need not be made both "in contemplation of" and "in connection with" a chapter 13 case—either one will do. *See In re Mayeaux*, 269 B.R. 614, 622 (Bankr. E.D. Tex. 2001). Thus, section 329(a) contains two different concepts, to which courts apply two different standards. *Id.*

As far back as 1933, the Supreme Court established what "in contemplation of the case" means. *See Conrad, Rubin & Lesser v. Pender,* 289 U.S. 472 (1933) (interpreting section 60(d) of the Bankruptcy Act of 1898, which was the precursor of section 329(a) of the Bankruptcy Code). There, the Court held that a debtor's attorney's services to "negotiate with creditors" in hopes of avoiding bankruptcy were rendered "in contemplation of" the debtor's bankruptcy filing. *Id*. at 477-79. In so doing, the Court applied a subjective test examining "the state of mind of the debtor and whether the thought of bankruptcy was the impelling cause of the transaction." *Id*. at 477. That the services were rendered in hopes of avoiding rather than filing bankruptcy is irrelevant, as "negotiations to prevent bankruptcy may demonstrate that the thought of bankruptcy was the impelling cause of the payment." *Id*. at 478-79.

The phrase "in contemplation of" is interpreted broadly. *In re Laferriere*, 286 B.R. 520, 527 (Bankr. D. Vt. 2002). Thus, a fee is considered to have been paid "in contemplation of" a bankruptcy case whenever it was paid for services "rendered at a time when the debtor was contemplating bankruptcy" or while "the debtor is influenced by the possibility or imminence of a bankruptcy proceeding." *Mayeaux*, 269 B.R. at 622 (internal quotation omitted). To the extent that the debtors in the cases identified in Ms. Greenberg's most recent certification paid Mr. Chapman for creditor negotiation services either to stave off bankruptcy, concurrent with filing

7

for bankruptcy, or after they had already filed for bankruptcy, all such payments were made "in contemplation of" their bankruptcy cases and so were required to be disclosed. *Cf. Arens v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1004 (5th Cir. 1995) (finding legal services to have been rendered "in contemplation" of bankruptcy where "the debtors were in desperate financial straits when they first consulted [the attorney], [ ] they sought representation in resolving their disputes with their largest creditor, and [ ] they had been unsuccessful in restructuring debt").

When it enacted section 329(a) Congress added the phrase "in connection with," thereby broadening even further the already wide net cast by "in contemplation of."  Services are held to be rendered "in connection with" a bankruptcy case "[i]f it can be objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case." *Mayeaux*, 269 B.R. at 623.

Like "in contemplation of," the phrase "in connection with" is interpreted broadly. *Laferriere*, 286 B.R. at 528.  Indeed, "in connection with" has an even broader scope, as many different kinds of legal services can have at least some impact on a bankruptcy case.  This is especially true where, as in the cases identified in Ms. Greenberg's most recent certification, the creditor negotiation services and bankruptcy services are "inextricably intertwined." *See In re Nunez*, 598 B.R. 696, 707 (Bankr. E.D.N.Y. 2019) (quoting *Cohn v. U.S. Trustee (In re Ostas)*, 158 B.R. 312, 322 (N.D.N.Y. 1993)).  As a result, "[o]nce a debtor is in financial distress, any fees paid to an attorney, whether for the specific purposes of filing a bankruptcy or for the purpose of obtaining relief outside of bankruptcy, are subject to bankruptcy court review if a bankruptcy is filed within one year of payment." *In re Ross*, No. 09-12073, 2010 WL 2509939, at *2 (Bankr. N.D. Cal. June 16, 2010) (citing *Pender* and *Prudhomme*).

Given his explanations regarding the cases identified by Ms. Greenberg, there is little doubt that Mr. Chapman's creditor negotiation services were inextricably intertwined with the

limited bankruptcy services he rendered in those cases.  Given the broad reach of section 329(a),

Mr. Chapman was required to "lay bare all [of his] dealings, antecedent and anticipated"

regarding his creditor negotiation services for the above-captioned debtors.  *In re Saturley*, 131

B.R. 509, 517 (Bankr. D. Me. 1991).  His Rule 2016(b) disclosures were required to be "precise

and complete."  *In re Berg*, 356 B.R. 378, 381 (Bankr. E.D. Pa. 2006) (internal quotation

omitted).  "Coy or incomplete disclosures" are unacceptable, even if due to negligence or

inadvertence.  *Saturley*, 131 B.R. at 517.  But Mr. Chapman's "disclosures" regarding his pre-

and post-petition agreements and payments relating to creditor negotiation services were beyond

coy or incomplete—they were nonexistent.  Indeed, in most cases he did not even disclose his

agreements and payments relating to his *bankruptcy* services.

In light of the foregoing, Mr. Chapman was required, in every case, to disclose not only

the amount he received or agreed to receive for bankruptcy services, but also to disclose all

amounts he received or agreed to receive for creditor negotiation services—and, under D.N.J.

LBR 2016-5(b)(2) and (d), to obtain court approval to be compensated for any services rendered

in "representation of the debtor in loss mitigation/loan modification efforts," which are not

covered by the standard "no-look" retainer.  *See, e.g.*, *In re Busillo*, Nos. 15-15627, 16-24335 &

17-10331, 2018 WL 6131767, at *7 (Bankr. D.N.J. Oct. 30, 2018) ("The Court typically awards

supplemental fees for loss mitigation . . . on an hourly basis."); *id*., at *8 ("[T]he Court typically

allows fees on an hourly basis for negotiating loan modifications."); *Ross*, 2010 WL 2509939

("All compensation received in the year before filing shall be disclosed, whether it be allocated

to bankruptcy, loan modification, or other services."); *In re Pimentel*, Nos. 10-101, 10-10494,

10-10481, 10-10509 & 10-10480, 2010 WL 843771, at *2 (Bankr. N.D. Cal. Mar. 8, 2010)

(sanctioning attorney for, among other things, "failing to disclose her 'loan modification' fees");

*cf. In re Bartmann*, 320 B.R. 725, 747-48, 753 (Bankr. N.D. Okla. 2004) (holding that section

9

329(a) requires debtor's attorney to disclose services and fees related to attempts to modify the debt that "was the precipitating cause of the bankruptcy," and ordering disgorgement).

"The presumptive sanction for a violation of § 329(a) is forfeiture of the entire fee." *SE Property Holdings, LLC v. Stewart (In re Stewart)*, 970 F.3d 1255, 1258 (10th Cir. 2020); *see also Rubin & Rubin, P.A. v. Office of the U.S. Trustee (In re NNN 400 Capitol Ctr. 16 LLC)*, 632 B.R. 243, 266 (D. Del. 2021), *aff'd*, 2022 WL 17831445 (3d Cir. Dec. 21, 2022) ("[D]enial and return of all fees is the default sanction for disclosure violations."); *In re 38-36 Greenville Ave LLC*, No. 16-15598 (SLM), 2020 WL 1680724, at *13 (Bankr. D.N.J. Apr. 6, 2020), *aff'd sub nom.*, *38-36 Greenville v. Forman*, No. 20-3563, 2021 WL 8087151 (D.N.J. Jun 9, 2021), *aff'd sub nom. In re 38-36 Greenville Ave LLC*, No. 21-2164, 2022 WL 1153123, at *4 (3d Cir. Apr. 19, 2022), *cert. denied sub nom. Kevin Kerveng Tung, P.C. v. Forman*, 143 S. Ct. 118 (Mem.) (2022) ("Failure to comply with § 329 and Bankruptcy Rule 2016(b) is grounds to deny all fees and costs sought by counsel.") (internal quotation marks omitted).

Indeed, unless the debtor's attorney provides "sound reasons supported by solid evidence" to explain a failure to comply with the disclosure requirements, a bankruptcy court abuses its discretion if it *fails* to order the return of all fees. *Stewart*, 970 F.3d at 1268 (reversing bankruptcy court order directing debtor's attorney to disgorge only $25,000 for "egregiously violat[ing] the disclosure requirements of § 329(a) and Rule 2016(b)," rather than the entire $350,000 the attorney received from the debtor). Although section 329(a) itself does not contain a provision regarding the denial and return of fees, the authority for that relief is 11 U.S.C. § 105(a), pursuant to which this Court "may issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Court]."

As a result, attorneys who do not comply with the disclosure requirements of the Bankruptcy Code and Rules risk not receiving—or not being allowed to keep— not just the fees

attributable to the nondisclosure, but also any fees for services rendered in, in contemplation of, and in connection with the case. "Courts have found violations of the duty [to disclose under section 329(a) and Rule 2016(b)] to be intolerable, and the sanctions imposed have been harsh, going far beyond the need to compensate for the damage done or even to deter the specific offender." *Stewart*, 970 F.3d at 1264; *see also Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881 (9th Cir. 1995) ("The disclosure rules are applied literally, even if the results are sometimes harsh."). Thus, "[i]n cases involving an attorney's failure to disclose his fee arrangement under § 329 or Rule 2016, . . . the courts have consistently denied all fees." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996) (reversing district court's affirmance of bankruptcy court's order because it failed to deny all fees and direct all fees received to be returned); *see also In re Hackney*, 347 B.R. 432, 443 (Bankr. M.D. Fla. 2006) ("Attorneys who fail to disclose compensation timely should suffer strict and quick consequences including the imposition of sanctions or the disgorgement of all fees paid in the case.").

"Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees." *Park-Helena*, 63 F.3d at 882. Failures to disclose made knowingly are even more perilous: "If any evidence exists to support an inference of intent, then the court should not fall prey to the professional's story of confusion, miscommunication, and negligence." *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 836, 839 (7th Cir. 1998).

In order to determine whether an attorney has fully complied with the duty to disclose all payments or agreements to be paid, this Court is authorized to review both **(1)** "a debtor's direct or indirect payment of money or transfer of property to an attorney for services rendered or to be rendered. . . if it was made . . . in contemplation of the filing of a bankruptcy petition by . . . the

debtor" and **(2)** "a debtor's payment of money or transfer of property—or agreement to pay money or transfer property—to an attorney after an order for relief[.]" Fed. R. Bankr. P. 2017(a), (b). "It does not matter whether the payment or transfer is made, or to be made, directly or indirectly, if the payment, transfer, or agreement is for services related to the case." Fed. R. Bankr. P. 2017(b).

If the Court determines that the compensation received or agreed to by Mr. Chapman "exceeds the reasonable value of any such service, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to" the estate if the funds paid to Mr. Chapman were estate property or would have been paid through a plan, or "the entity that made such payment," which is typically the debtor  11 U.S.C. § 329(b).  Under section 329(b), "[t]he burden of proving the reasonableness of attorney's fees is on the attorney." *In re Veluz*, No. 14-20101 (DHS), 2015 WL 161002, at *5 (Bankr. D.N.J. Jan. 12, 2015).  Although the duty to disclose under section 329(a) only reaches back one year, there is "no time limitation period for disgorgement."  *In re Hanawahine*, 577 B.R. 573, 578 (Bankr. D. Haw. 2017); *see also Prudhomme*, 43 F.3d at 1002-03 (holding that neither section 329 nor Rule 2017 has a time limitation for disgorgement).

Mr. Chapman's limited chapter 13 services have proven to be valueless, as the cases he has filed have all been dismissed without confirming a plan, usually for failures to comply with basic requirements without a plan even being filed.  By his own admission, Mr. Chapman's chapter 13 filings are made with the intention of obtaining the automatic stay pursuant to 11 U.S.C. § 362, which allows him to buy time to continue rendering creditor negotiation services. But filing a bankruptcy petition solely to invoke the automatic stay and with no ability or intention to pay creditors—for example, to stop eviction proceedings—is "an abuse of the bankruptcy process that will not be tolerated," and is the prototypical bad faith filing.  *See In re*

*Lippolis*, 228 B.R. 106, 112 (E.D. Pa. 1998); *see also In re Nelson*, 66 B.R. 231, 235 (Bankr.

D.N.J. 1986) ("[A] petition in bankruptcy is filed in bad faith when the relief sought by the filing

is exclusively the operation of an automatic stay in order to prevent a foreclosure.").

 Given Mr. Chapman's abject failure to disclose the amounts he has received or has

agreed to receive for bankruptcy and creditor negotiation services rendered or to be rendered in,

in contemplation of, and in connection with the chapter 13 cases identified by Ms. Greenberg,

the default sanction of total denial and return of fees is warranted.  In addition, due to the poor

quality of the bankruptcy services Mr. Chapman has rendered in all of his chapter 13 cases,

under section 329(b) this Court should cancel any fee agreement he has with any of the clients

for whom he has filed a chapter 13 case, deny any unpaid fees, and order him to return to the

debtors all fees they paid to him, whether for bankruptcy services or creditor negotiation

services.  *See, e.g.*, *Kasuri Byck, LLC v. Office of the U.S. Trustee (In re Silicon Alley Grp. Inc.)*,

No. 16-8825, 2017 WL 2780743, at *2 (D.N.J. June 27, 2017) (affirming order that denied

compensation to debtor's attorney and ordered disgorgement under section 329(b) where "the

Bankruptcy Court cited multiple instances where Appellant's representation of debtor was

inadequate or inappropriate," "certain filings made by Appellant were incorrect or improper,"

and "Appellant did not contribute to any progress that was made in th[e] case") (internal

quotation marks omitted); *In re Vargas*, 257 B.R. 157, 166-67 (Bankr. D.N.J. 2001) ("Pursuant

to § 329, courts have ordered attorneys to disgorge their fees for services they rendered to their

debtors-clients because such services were of no value."); *In re Lee*, 495 B.R. 107, 113 (Bankr.

D. Mass. 2013) ("When an attorney ineptly or incompetently renders services on behalf of

debtors, the court may order disgorgement of all fees pursuant to § 329.").

 So that this Court may determine the extent, if any, to which Mr. Chapman's services

benefitted his clients, this Court should order Mr. Chapman to file copies of all agreements he

entered into with all of the clients for whom he filed the chapter 13 cases identified in Ms.

Greenberg's most recent certification, as well as any agreements he entered into with any client

for whom he filed a chapter 13 petition since the most recent case identified by Ms. Greenberg.

In addition, to allow the Court to determine the proper amount for Mr. Chapman to return to each

client, Mr. Chapman should be ordered to file an accounting of all moneys he has received from

any source for services rendered in, in contemplation of, and in connection with all of the chapter

13 cases identified by Ms. Greenberg—including all creditor negotiation services.

II.      **Mr. Chapman should be ordered to disclose all agreements he has entered into with all of the debtors in the cases identified in Ms. Greenberg's most recent certification, produce all "wet signatures" for all petitions and other documents purporting to bear the debtor's signature, and otherwise prove compliance with the Bankruptcy Code's Debt Relief Agency Provisions and Local Rules Relating to Electronic Filing**

Mr. Chapman is a "debt relief agency," and the credit relief services clients for whom he

ultimately files chapter 13 petitions are "assisted persons," for purposes of the Bankruptcy

Code's debt relief agency provisions, 11 U.S.C. §§ 526-528.  *See Milavetz, Gallop & Milavetz,*

*P.A. v. United States*, 559 U.S. 229, 232 (2010) (holding that a bankruptcy attorney falls within

the definition of a "debt relief agency"); 11 U.S.C. § 101(3) (definition of "assisted person"); 11

U.S.C. § 101(4A) (definition of "bankruptcy assistance"); 11 U.S.C. § 101(12A) (definition of

"debt relief agency").

As a result, under section 526(a) Mr. Chapman "shall not," among other things, "make

any statement, or counsel any assisted person or prospective assisted person to make a statement

in a document filed in [a case under the Bankruptcy Code] that is untrue or misleading, or that

upon the exercise of reasonable care, should have been known by [Mr. Chapman] to be untrue or

misleading."  11 U.S.C. § 526(a)(2).  Mr. Chapman made knowingly untrue or misleading

statements in virtually every one of his bankruptcy cases if he did not obtain the debtor's "wet

signature" before filing every document that purported to have been signed by the debtor.  *See*

14

Fed. R. Bankr. P. 1008 (requiring "[a] petition, list, schedule, statement, and any amendment thereto [to] be verified or [] contain an unsworn declaration under 28 U.S.C. § 1746"); 28 U.S.C. § 1746 (requiring unsworn declaration to be "in writing"); D.N.J. LBR 5005-1(b)(3)(C) (requiring registered CM/ECF user who files a document bearing the electronic signature preceded by "/s/" of anyone other than the user to "retain a document bearing the original signature of [such] third party for 7 years after the closing of the case").  "On request of the court or a party"—such as Ms. Greenberg—Mr. Chapman must "produce the document bearing the original signature."  D.N.J. LBR 5005-1(b)(3)(C).  If he cannot do so, he must have violated section 526(a)(2) in every case.

In addition, Mr. Chapman is required to "execute a written contract with [his consumer bankruptcy clients] that explains clearly and conspicuously—(A) the services [he] will provide to [each of them in their cases]; and (B) the fees or charges for such services, and the terms of payment."  11 U.S.C. § 528(a)(1).  He must also provide his clients with copies of the executed contract.  11 U.S.C. § 528(a)(2).  If Mr. Chapman did not execute such a written contract and provide a copy to the debtor in every case, he violated section 528 in every case.

And Mr. Chapman is required to provide certain disclosures to his consumer bankruptcy clients, including disclosures relating to the relative benefits of each chapter of the Bankruptcy Code, the penalties for making a false oath, and the requirement that all information provided during their chapter 13 case be complete and accurate.  11 U.S.C. § 527.  Mr. Chapman is required to maintain a copy of those notices for two years after the notices are provided to his consumer bankruptcy clients.  11 U.S.C. § 527(d).  If Mr. Chapman did not provide the required disclosures in every case, he violated section 527 in every case.

 Failure to comply with sections 526, 527, or 528 renders any contract with a consumer bankruptcy client void and unenforceable against the debtor.  11 U.S.C. § 526(c)(1); *see also In*

15

*re Davis*, 605 B.R. 658, 668 (Bankr. D.N.J. 2019).  In such an instance, Mr. Chapman would also

be liable "in the amount of any fees or charges in connection with providing bankruptcy

assistance to such person as [Mr. Chapman] has received," plus the debtor's damages and

attorney's fees, if Mr. Chapman: **(i)** "intentionally or negligently failed to comply with" sections

526, 527, or 528; **(ii)** "provided bankruptcy assistance" in a bankruptcy case "that is dismissed or

converted . . . because of [Mr. Chapman's] intentional or negligent failure to file any required

document"; or **(iii)** "intentionally or negligently disregarded the material requirements of [the

Bankruptcy Code and Rules]."  11 U.S.C. § 526(c)(2).  As a result, "Section 526(c) provides

independent grounds for total disgorgement."  *In re Seare*, 493 B.R. 158, 225 (Bankr. D. Nev.

2013), *aff'd*, 515 B.R. 599 (B.A.P. 9th Cir. 2014).  On this record, it would appear that all

contracts are void under section 526(c)(1) and all debtors are entitled to a return of all fees paid

to Mr. Chapman, plus any damages and attorneys fees they might also have incurred, under

section 526(c)(2).

In light of the foregoing, this Court should order Mr. Chapman to prove that he has

complied with sections 526, 527, and 528 by producing **(1)** proof that he entered into a written

contract and provided it to the debtors in the cases identified on Ms. Greenberg's most recent

certification and **(2)** proof that he provided the requisite notices to those debtors.  In addition, this

Court should order Mr. Chapman to produce the original, "wet" signature for every document he

filed bearing a debtor's purported electronic signature preceded by "/s/."  If he is unable to do

any of those things, this Court should order that all contracts with Mr. Chapman's consumer

bankruptcy clients are void, and that Mr. Chapman must return all fees he received in every case.

III.    **Mr. Chapman should be ordered to reimburse Ms. Greenberg for all costs incurred in addressing the matters raised in this miscellaneous proceeding, and to pay a monetary penalty to the Court in an amount sufficient to deter repetition by Mr. Chapman and other similarly situated consumer bankruptcy attorneys**

Ms. Greenberg's request that Mr. Chapman pay her fees and costs in the amount of $5,000, as well as her request that Mr. Chapman be ordered to pay a sanction to the Court, is supported by Bankruptcy Code sections 526(c)(5) and 105(a) and Bankruptcy Rule 9011(c).[4]

Under section 526(c)(5), if this Court finds that Mr. Chapman either "intentionally violated [section 526], or engaged in a clear and consistent pattern or practice of violating [section 526]," this Court "may . . . impose an appropriate civil penalty against [Mr. Chapman]." 11 U.S.C § 526(c)(5). If this Court decides that a civil penalty is warranted, it "should be designed to deter the offending parties and others from future, similar misconduct." *Hanawahine*, 577 B.R at 580. Both an award of fees and a sanction payable to the Court could constitute "an appropriate civil penalty" under section 526(c)(5) to address Mr. Chapman's failures to comply with the Bankruptcy Code's debt relief agency provisions. 11 U.S.C. § 526(c)(5).

An award of fees and a penalty payable to the Court could also be ordered pursuant to 11 U.S.C. § 105(a) in conjunction with various provisions of the Bankruptcy Code and Rules that do not themselves contain a "hammer" to use when they are violated. By itself, section 105(a) "has a limited scope[, and] does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code." *Joubert v. ABN AMRO Mortg. Grp., Inc. (In re Joubert)*, 411 F.3d

---

[4] If this Court finds that Mr. Chapman acted in bad faith this relief could also be supported by this Court's inherent power "to discipline attorneys who appear before it" as well as 28 U.S.C. § 1927, which provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See Chambers*, 501 U.S. at 43 (bad faith required to invoke inherent power); *LaSalle Nat'l Bank v. First. Conn. Holding Group, L.L.C. XIII*, 287 F.3d 279, 289 (3d Cir. 2002) (bad faith required to invoke 28 U.S.C. § 1927).

452, 455 (3d. Cir. 2014) (internal quotation marks omitted).  Instead, section 105(a) "serves only

to carry out authorities expressly conferred elsewhere in the code."  *Harrington v. Purdue*

*Pharma, L.P.*, 603 U.S. 204, 216 n.2 (2024) (quotation marks omitted); *see also Joubert*, 411

F.3d at 455 ("Section 105(a) empowers bankruptcy courts . . . to fashion orders in furtherance of

Bankruptcy Code provisions.").

 When teamed with other provisions of the Bankruptcy Code and federal and local

bankruptcy rules, however, section 105(a) allows this Court to take a wide range of actions.  *See*

*38-36 Greenville Ave*, 2022 WL 1153123, at *4 (stating that "[v]iolations [of the Code's attorney

compensation disclosure requirements] are . . . appropriately policed through equitable remedies

fashioned by the Bankruptcy Court" even though no specific Code provisions provide for that).

Section 105(a) can also be used to "enforce court . . . rules," including the federal and local rules

related to the verification and electronic filing of documents in bankruptcy cases and the Rules of

Professional Conduct (the "RPCs").

 For example, violations of the "wet signature" requirement imposed by Bankruptcy Rule

1008 and Local Rule 5005-1(b)(3)(C) are subject to sanction under section 105(a).  *See In re*

*Stomberg*, 487 B.R. 775, 818 (Bankr. S.D. Tex. 2013) (finding that attorney's improper

electronic filings "eclipse[] 9011(b) and (c)'s narrow confines, resulting in violations of [Rule]

5005(a)([3]) . . . and Local Rule[] 5005-1," and "[t]he Court may therefore employ § 105 to

sanction such misconduct").  In addition, D.N.J. LBR 9010-1(a) requires attorneys practicing

before this Court to comply with the RPCs.  As a result, Mr. Chapman was required to comply

with, among other things, the duty of competence (RPC 1.1), the duty to make only meritorious

claims and contentions (RPC 3.1), the duty to exhibit candor to the tribunal (RPC 3.3), and the

duty not to engage in misconduct, including "conduct involving dishonesty, fraud, deceit and

misrepresentation" (RPC 8.4).  Violations of the RPCs can result in sanctions under section

105(a). *See, e.g.*, *In re Willis*, 604 B.R. 206, 212 (Bankr. W.D. Pa. 2019) (imposing sanctions

under section 105(a) for violations of RPCs 3.1, 3.3, and 8.4, including ordering the return of

$100 to each of 42 clients); *In re Santana*, No. 12-36802/JHW, 2013 WL 1498278, at **3-4

(Bankr. D.N.J. Apr. 10, 2013) ("[T]he scope of court orders or rules that may be enforced [under

section 105(a)] includes the relevant Rules of Professional Conduct governing attorney conduct

under state law.").

Under Rule 9011(b), every time Mr. Chapman signs and files a chapter 13 petition he

"certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry

reasonable under the circumstances," the petition "is not being presented for any improper

purpose, such as to harass or cause unnecessary delay or needless increase in the cost of

litigation," and "the allegations and other factual contentions [in the petition] have evidentiary

support or, if specifically so identified, are likely to have evidentiary support after a reasonable

opportunity for further investigation or discovery." *See* Fed. R. Bankr. P. 9011(b)(1) & (3).

Before seeking Rule 9011 relief, a party must usually comply with a "safe harbor"

provision whereby an attorney to be sanctioned under Rule 9011(b) must be served with the

motion and given 21 days in which to withdraw or correct the offending paper.[5]  Fed. R. Bankr.

P. Rule 9011(c)(1)(A).  The lone exception is where "the conduct alleged is the filing of a

petition in violation of" Rule 9011(b).  Fed. R. Bankr. P. 9011(c)(2)(B).  But here, the Court is

the "movant" by dint of its Order to Show Cause, and the Court is not subject to the "safe

harbor" provision—so it may reach beyond petitions to address all "pleading[s], written

---

[5] The other provisions that support the relief requested by Ms. Greenberg do not have a "safe harbor" requirement. *See, e.g.*, *In re King*, No. 21-19296-ABA, 2023 WL 4606987, at *7 (Bankr. D.N.J. July 18, 2023) ("Unlike Rule 9011, no safe harbor letter is required for the imposition of sanctions under 11 U.S.C. § 105(a)[.]"); *In re Finn*, Nos. 19-71144 & 19-71778, 2020 WL 6065755, at *8 (Bankr. C.D. Ill. Aug. 28, 2020) (holding that neither section 105(a) nor section 526(c) requires a safe-harbor notice); *In re Bonilla*, 573 B.R. 368, 383 (Bankr. D.P.R. 2017) (ordering disgorgement under section 329 even though the Rule 9011 "safe harbor" was not complied with).

motion[s], or other paper[s]" that have been "sign[ed], fil[ed], submitt[ed], or [] advocat[ed]" by Mr. Chapman in his cases. Fed. R. Bankr. P. 9011(b). To the extent Mr. Chapman files chapter 13 petitions with the sole purpose of frustrating creditors' ability to pursue their state court remedies, those petitions are filed "for an[] improper purpose, such as to . . . cause unnecessary delay" of the landlord's eviction proceedings, or to "needless[ly] increase [] the cost of litigation." *See* Fed. R. Bankr. P. 9011(b)(1); *see also King*, 2023 WL 4606987, at *6 (holding bankruptcy case was filed for an improper purpose when it was part of "a scheme to hinder and delay" creditor from enforcing state court foreclosure rights). "[T]he fact that a case [was] filed for an improper purpose is alone sufficient to warrant a sanction." *King*, 2023 WL 4606987, at *5 (internal quotation marks omitted). It would not matter if the case was filed "as an emergency," because "exigent circumstances do not excuse the failure to conduct a reasonable inquiry." *In re Thomas*, 612 B.R. 46, 67 (Bankr. E.D. Pa. 2020).

In addition, if Mr. Chapman filed any document bearing the debtor's electronic signature without first obtaining the debtor's "wet" signature, that would be an additional violation of Rule 9011(b)(3). *See In re Wenk*, 296 B.R. 719, 728 (Bankr. E.D. Va. 2002) ("The court finds that [debtor's attorney] violated [Rule] 9011 because there could not have been a belief that the filing of a petition with what amounts to a forged debtor's signature (or a petition with no signatures for that matter) was proper or warranted under existing law or a good faith argument to extend the law."). "When documents requiring the debtor's original signature are not signed by the debtor, the evidentiary basis for the information in those documents no longer exists"—so filing them violates Rule 9011(b). *Veluz*, 2015 WL 161002, at *4. This is no small matter: "[S]igning a debtor's name to a bankruptcy petition or other such documents without having evidence in hand that the debtor actually signed the document may result in not only a

denial of fees but also the loss or suspension of the attorney's law license." *In re Thomas*, 657

B.R. 613, 634 (Bankr. C.D. Ill. 2024).

 In light of the foregoing, Mr. Chapman likely did not comply with Rule 9011(b) in any of

the chapter 13 cases he filed.  As a result, this Court may impose both monetary and

nonmonetary sanctions on Mr. Chapman.  Fed. R. Bankr. P. 9011(c)(4)(A).  Monetary sanctions

may include a penalty payable to the Court and an order directing payment of a party's

"attorney's fees and other expenses directly resulting from the violation."  Fed. R. Bankr. P.

9011(c)(4)(A)(ii) & (iii).  But, any sanction "shall be limited to what is sufficient to deter

repetition of [the sanctionable] conduct or comparable conduct by others similarly situated."

Fed. R. Bankr. P. 9011(c)(4)(B); *see also Stomberg*, 487 B.R. at 818 ("[R]elevant to this Court's

determination of appropriate sanctions is the consideration of whether the conduct at issue was

an isolated incident or part of a pattern of activity").  For example, in *In re Rivera*, Judge Stern

imposed a penalty of $500 "per incident," which amounted to $125,000 because of the number

of violations identified.  *See In re Rivera*, 342 B.R. 435, 464 (Bankr. D.N.J. 2006).

 Ms. Greenberg has already quantified her requested fee amount at $5,000.  The U.S.

Trustee leaves to the Court the determination of the size of any sanction Mr. Chapman should be

ordered to pay to the Court.  But an example can be found in another miscellaneous proceeding

filed in this Court against another attorney who was found to have violated the Bankruptcy Code,

Bankruptcy Rule, and Local Rule provisions that required him to disclose fees and fee

agreements related to loss mitigation services and to request court approval for fees received for

loan modification services.  *See U.S. Bankruptcy Court for the District of New Jersey v. William

H. Oliver, Jr.*, Misc. Pro. No. 19-00111 (CMG), Docket Entries 15, 24 & 26.  There, the Court

imposed a sanction of $50,000 payable to the Court in installments, in addition to other monetary

and nonmonetary relief.  *Id.*

**IV.    Mr. Chapman should be barred from filing any bankruptcy petitions in the District of New Jersey for a period of one year**

Although Ms. Greenberg has asked for Mr. Chapman's ECF privileges to be revoked, it must be recalled that he was filing inadequate chapter 13 petitions, without making the requisite disclosures of the amounts he was paid or had agreed to be paid for his creditor negotiation services, for years before he began using the Court's CM/ECF electronic filing system.  As a result, just suspending his ECF privileges would not save the Court, the Standing Chapter 13 Trustees, or the U.S. Trustee from having to deal with Mr. Chapman's inadequate chapter 13 filings—which, after all, are not true chapter 13 filings at all, but are merely the rump end of Mr. Chapman's creditor negotiation services that he offers to help his clients stay in their home.

Rather than merely suspending Mr. Chapman's ECF privileges, this Court should consider entering an order barring him from filing any bankruptcy cases, by any method, in the District of New Jersey.  At the very least, he should be precluded from filing any chapter 13 petitions until such time as he learns what makes a legitimate chapter 13 case, and what is required of a chapter 13 debtor and their attorney.  His chapter 7 practice could be just as bad as his chapter 13 practice, but no record regarding his chapter 7 practice has yet been developed in this miscellaneous proceeding.

An order barring Mr. Chapman from filing petitions for a period of one year should give him sufficient time to either decide not to file bankruptcy petitions anymore for his creditor negotiation services clients (perhaps referring them to actual chapter 13 bankruptcy practitioners instead), or else to learn exactly what chapter 13 debtors and their attorneys must do to successfully get a case through chapter 13—including how to identify clients that have the ability and intention to fund a feasible chapter 13 plan.

Courts have used a variety of provisions to impose filing bars on attorneys, sometimes for periods much longer than one year. *See, e.g.*, *Parker v. Jacobs*, 466 B.R. 542, 554 (M.D. Ala. 2012), *aff'd*, 485 F. App'x 989 (11th Cir. 2012) (affirming permanent bar pursuant to inherent power, section 526, and Rule 9011); *Schaffner v. U.S. Trustee*, 485 B.R. 130, 135 (E.D. Ky. 2012) (affirming permanent bar from practicing in bankruptcy court); *In re Recovery Law Grp., APC*, Case Nos. 24-301-KRH, 24-31714-KRH, 24-32478-KRH, 24-32957-KLP, 24-32962-KRH & 24-33369-KRH, 2025 WL 1074362, at *42-43 (Bankr. E.D. Va. Apr. 7, 2025) (suspending firm for "not less than two years," and permanently barring attorney employed by firm, pursuant to inherent power and section 526(c)(5)); *Layng v. Barclay (In re Mennona)*, Bankr. Case No. 21-11967 TBM, Adv. Pro. No. 22-1139 TBM, 2023 WL 149957, at **28, 32 (Bankr. D. Colo. Jan. 10, 2023) (suspending attorney and firm for three years pursuant to inherent power, section 526(c)(5), and Rule 9011(c)); *In re Ebel*, 371 B.R. 866, 877 (Bankr. S.D. Ill. 2007) (suspending attorney "from further practice before th[e] Court" pursuant to court's inherent authority, section 105(a), and local disciplinary rules).

## CONCLUSION

For the foregoing reasons, the U.S. Trustee respectfully requests that this Court enter an order: **(1)** directing Mr. Chapman to file a copy of his fee agreements and an accounting of all moneys he received for services rendered in, in contemplation of, or in connection with all cases identified in Ms. Greenberg's most recent certification (Docket Entry 14); **(2)** directing Mr. Chapman to return all such moneys to the debtors in those cases; **(3)** cancelling any fee agreement Mr. Chapman has with any of those debtors and denying any further payment to Mr. Chapman; **(4)** directing Mr. Chapman to produce the "wet" signatures for all petitions and other documents purporting to bear the debtor's signature in all cases identified in Ms. Greenberg's most recent certification; **(5)** directing Mr. Chapman to comply with all provisions of the

Bankruptcy Code, Bankruptcy Rules, and Local Rules in all future bankruptcy cases filed in the District of New Jersey, regardless of chapter; **(6)** directing Mr. Chapman to pay $5,000 to Ms. Greenberg to reimburse her for costs incurred in addressing the matters raised in this miscellaneous proceeding; **(7)** imposing a monetary penalty payable to the Court in such amount as this Court deems necessary to deter repetition by Mr. Chapman and similarly situated consumer attorneys; **(8)** barring Mr. Chapman from filing any chapter 13 petitions in the District of New Jersey for a period of one year; and **(9)** imposing such additional relief as this Court deems just.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 AND 9

By:   */s/ Robert J. Schneider, Jr.*
Robert J. Schneider, Jr.
Trial Attorney

DATED: April 18, 2025